UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**KHALIL COLEMAN**                                                            **PLAINTIFF**

**v.**                             **CIVIL ACTION NO. 3:23-CV-P86-JHM**

**J.J. SCARBOROUGH** *et al.*                                          **DEFENDANTS**

**MEMORANDUM OPINION**

This is a *pro se* 42 U.S.C. § 1983 prisoner civil-rights action. This matter is before the Court for screening of the amended complaint (DN 10) pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the Court will dismiss this action.

**I.**

In the amended complaint, Plaintiff Khalil Coleman indicates that he is convicted prisoner who was previously incarcerated at Meade County Detention Center (MCDC). He sues MCDC Jailer J.J. Scarborough and MCDC Correctional Officer Kyle Henderson in both their official and individual capacities.

Plaintiff makes the following allegations in the amended complaint:

(1) On December 5, 2022, I was transferred to [MCDC]. Upon arrival, I requested all of my legal paperwork that came with me from Kenton County. The next day, I was given a bin of scattered papers thrown inside unorganized. After sorting out all of my documents, I realized all my legal work was not accounted for. I attempted to request for my full documents; which contained direct appeal information, 60.02 motion, legal notes pertaining [to] my case and documentation from courts on case material. Over the next couple days, [Defendant] Henderson came into the pod and told me in front of everyone that he was not going to search through my property and "if I ask anybody else about this matter, he would punish me in a serious manner I wouldn't like." I spoke with prisoners in the pod who encouraged me to file a grievance, explaining my denial of legal material, and my fear of future punishment at the jail. My second week my grievance was answered saying it'd be looked into, but the matter was not resolved, as I was put in the hole for an argument between me and another prisoner, after a fight occurred between two other individuals.

(2) While in the hole, I was told I would be in there for 30 days, which violated jail handbook disciplinary action . . . . I was denied request and grievance forms, access to any law materials, or documents, denial of attorney & court contact, no religious materials, freezing temperature with no proper clothing or mat nor sheet or cover 16 hours per day, not allowed to shower or clean teeth until every 3 days for only 30 minutes, served loaf cold 3 meals every day, unable to flush toilet except every 3 hours while sharing a cell with another toxic waste, refusal to clean cell, slept on floor as a state prisoner, refusal of medical treatment (as I expressed I have a history of anemic and I experienced high blood pressure and could not breathe). After over a week of extremely harsh conditions and treatment, I was transferred out of punishment instead of fixing these very serious complaints . . . .

(3) Before going to the hole, in the pod, I slept on the floor with other prisoners under molded walls, freezing cold conditions, cold showers often, forced labor to clean the cell with other prisoners daily. Request and grievance were only accessible until 1p.m. every weekday and none at all over the weekend. Tablets were shared in the pod, making Fast Case Law access hindering to access legal support. . . .

(4) Due to the denial of my legal documents, inability to reach my attorney & court, hindered access to law library and being put in the hole . . . it contributed to eventually losing key witnesses to help write affidavits for my 60.02 motion requesting relief; which was later denied. I was unable to get timely attorney letters to make decisions about the status of my direct appeal and/or post conviction investigation. These matters withheld me from accessing the court or my attorney who was appointed in November to investigate my 60.02, which led to eventual withdrawing from my case. Then I was transferred on December 20, 2022 . . . .

(5) These actions were motivated by evil motive and/or intent and callous indifference, which violates Due Process, access to attorney and court, inadequate legal support/material . . . [and the] Eighth Amendment . . . . These violations by staff of the institution acted under color of state law, either by denying or allowing these actions to continue due to policy or lack of. This claim shows a constant cycle of abuse, as the jail has notice to prisoners if they file a grievance they can be punished if they deem it frivolous, as [Defendant Jailer Scarborough] acted out of jail handbook in allow punishment to hinder, withhold or deny the rights of myself and others, resulted in discrimination. Failure to practice religion, due process regarding punishment, transfer, segregation, cruel & unusual punishment . . . . Additionally, I suffer from distress due to conditions of confinement, mental pain & suffering and continued fear of retaliation because of using administrative remedies.

As relief, Plaintiff seeks damages.

## II.

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The Court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to

the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

#### A. Official-Capacity Claims

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Thus, Plaintiff's official-capacity claims against Defendants Scarborough and Henderson are actually against their employer, Meade County. A municipality such as Meade County cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

A plaintiff may prove an unconstitutional "policy" or "custom" by demonstrating one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

Here, Plaintiff asserts that the alleged wrongs committed against him were "by evil motive and/or intent and callous indifference, which violates Due Process, access to attorney and court, inadequate legal support/material . . . [and the] Eighth Amendment . . . . These violations by staff of the institution acted under color of state law, either by denying or allowing these actions to continue due to policy or lack of. This claim shows a constant cycle of abuse . . . . "

As set forth below, the Court concludes that Plaintiff's allegations fail to show that his constitutional rights were violated at MCDC. However, even if he had, the above allegation is simply too vague and conclusory to demonstrate that a Meade County custom or a policy was the moving force behind any violation of Plaintiff's constitutional rights.

Thus, Plaintiff's official-capacity claims will be dismissed for failure to state a claim upon which relief may be granted.

### B. Individual-Capacity Claims

#### 1. Jailer Scarborough

Plaintiff alleges that Jailer Scarborough failed to follow the MCDC Handbook in his interactions with Plaintiff. However, the "failure of prison officials to follow institutional procedures or policies does not give rise to a constitutional claim." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004) ("[S]tate law,

5

by itself, cannot be the basis for a federal constitutional violation."); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995) (rejecting inmate's argument that prison failed to follow Michigan prison regulations in putting him in segregation).

Moreover, to the extent that Plaintiff seeks to hold Jailer Scarborough liable for other purported constitutional violations at MCDC based upon Jailer Scarborough's supervisory role at MCDC, his claim fails. The doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) ("In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). Plaintiff's allegations do not show that Jailer Scarborough's own actions violated Plaintiff's constitutional rights.

For these reasons, the Court will dismiss the individual-capacity claims against Jailer Scarborough for failure to state a claim upon which relief may be granted.

### 2. Officer Henderson

Plaintiff seems to allege that Officer Henderson retaliated against him by threatening to punish Plaintiff "in a serious manner [he] wouldn't like" if Plaintiff continued to ask for access to

all of his legal materials. To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

For purposes of this initial review only, the Court will assume that Plaintiff has satisfied the first and third prongs of the above standard. Thus, the Court need only determine whether Defendant Henderson's threat to "punish [Plaintiff] in a serious manner [he] wouldn't like" constitutes an adverse action. A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights. *See, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

Here, the Court finds that Defendant Henderson's alleged threat is too vague to deter a person of ordinary firmness from exercising his or her First Amendment rights. *See, e.g.*, *Lloyd v. Pettit*, No. 22-3505, 2022 U.S. App. LEXIS 32315, at *4-5 (6th Cir. Nov. 22, 2022) (holding that an unspecified threat is simply too vague to qualify as an adverse action); *Hardy v. Adams*, No. 16-2055, 2018 U.S. App. LEXIS 9471, at *8 (6th Cir. Apr. 13, 2018) ("[T]he alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Dahlstrom v. Butler*, No. 2:18-cv-101, 2019 U.S. Dist. LEXIS 883, at *28 (W.D. Mich. Jan. 3, 2019) ("Krause's threat[--to 'get' a prisoner who files a grievance on Krause and 'steps out of

7

line'--] is too vague and non-specific to deter a person of ordinary firmness from engaging in protected conduct.").

Thus, Plaintiff's retaliation claim against Defendant Henderson will be dismissed for failure to state a claim upon which relief may be granted.

### C. Other Claims

#### 1. First Amendment

##### a. Retaliation

Plaintiff also seems to allege that he was transferred from MCDC to another jail in retaliation for complaining about his conditions of confinement. The Court finds that this allegation fails to satisfy the second prong of the First Amendment retaliation standard set forth above. This is because transfers to another jail or prison are not typically an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). And, although a prison transfer can be sufficiently adverse to support a retaliation claim where aggravating circumstances exist, *see Hill v. Lappin*, 630 F.3d 468, 474-75 (6th Cir. 2010) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005)0, Plaintiff has alleged no such circumstances here. Thus, the Court will also dismiss this retaliation claim for failure to state a claim upon which relief may be granted.

##### b. Denial of Access to the Courts

Plaintiff alleges that he was incarcerated at MCDC for approximately two weeks. He alleges that during this time, he was denied access to all of his legal documents, including his "direct appeal information, 60.02 motion, legal notes pertaining [to] my case and documentation from courts on case material." Plaintiff continues:

> Due to the denial of my legal documents, inability to reach my attorney & court, hindered access to law library and being put in the hole . . . it contributed to

8

> eventually losing key witnesses to help write affidavits for my 60.02 motion requesting relief; which was later denied. I was unable to get timely attorney letters to make decisions about the status of my direct appeal and/or post-conviction investigation. These matters withheld me from accessing the court or my attorney, who was appointed in November to investigate my 60.02, which led to eventual [his] withdrawing from my case.

Prisoners have a constitutional right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Lewis v. Casey*, 518 U.S. 343, 350 (1996). To state a viable claim for denial of access to the courts, however, a prisoner must demonstrate he suffered "actual injury" as a result of particular actions of prison officials. *Lewis*, 518 U.S. at 351. Actual injury requires a showing that a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Id.* at 356; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (stating that an inmate must show, "for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim"). "[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed "actual injury" standard to include requirement that action be non-frivolous).

The only actual legal injury that Plaintiff set forth in the complaint is the denial of his state-court Kentucky Rule of Civil Procedure 60.02 post-conviction motion that he filed without counsel. The first deficiency in this claim is that Plaintiff has not alleged or shown that his Rule 60.02 motion was non-frivolous. However, even if had, the record shows that during the two

weeks that Plaintiff was incarcerated at MCDC, he was represented by counsel.[1] "A prisoner's right of access to the courts is fully protected if he is represented by counsel." *Resch v. Washington*, No. 1:21-cv-293, 2022 U.S. Dist. LEXIS 71727, at *23 (W.D. Mich. Apr. 19, 2022) (citing *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 104 (6th Cir. 1991); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citing *Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir. 1983)) (holding that, once counsel has been appointed, the state has fulfilled its constitutional obligation to provide access to the courts)). And although Plaintiff alleges that he was unable to contact his attorney during the week he was "in the hole," Plaintiff has not alleged that this temporary deprivation resulted in the state court's denial of his Rule 60.02 motion. *See, e.g.*, *Gibson v. Yaw,* No. 1:22-cv-773*,* 2023 U.S. Dist. LEXIS 62130, at *31 (S.D. Ohio Apr. 7, 2023) (dismissing denial-of-access-to-courts claim where the plaintiff did not explain how a temporary inability to access his counsel caused him injury).

For these reasons, the Court finds that this claim must be dismissed for failure to state a claim upon which relief may be granted.

### c. Free Exercise/RLUIPA

The Court next turns to Plaintiff's claim that he had no "religious materials" while he was incarcerated at MCDC. The Court construes this a claim that he was not allowed to freely exercise his religion. "Prisoners retain the First Amendment right to the free exercise of their religion." *Hayes v. Tenn.*, 424 F. App'x 546, 549 (6th Cir. 2011) (citing *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985)). A violation of the First Amendment requires the imposition of a "substantial burden" on a plaintiff's exercise of his religion. *Welch v. Spaulding*, 627 F. App'x 479, 485

---

[1] Plaintiff states that an attorney was appointed for him in November 2022 "to investigate my 60.02." Plaintiff's state-court record shows that shows that his attorney was granted leave to withdraw as Plaintiff's attorney on January 30, 2023. *See Commonwealth v. Coleman*, 21-CR-00294 (Kenton Cnty. Cir. Ct.).

(6th Cir. 2015). Similarly, the Religious Land Use and Institutionalized Persons Act (RLUIPA) prohibits the governmental imposition of a "substantial burden on the religious exercise" of an inmate unless the government establishes that the burden furthers a "compelling governmental interest" through the "least restrictive means[.]" 42 U.S.C. § 2000cc-1(a).

Here, Plaintiff's First Amendment free-exercise claim, as well as any RLUIPA claim, fails because the allegations are vague and conclusory and Plaintiff does not even identify his religion. Thus, these claims will also be dismissed for failure to state a claim upon which relief may be granted.

### 2. Eighth Amendment

#### a. Conditions-of-Confinement

Plaintiff makes several allegations based upon conditions of confinement during his two-week incarceration at MCDC. With regard to his first week, he states:

> Before going to the hole, in the pod, I slept on the floor with other prisoners under molded walls, freezing cold conditions, cold showers often . . . .

With regard to his second week,[2] he writes:

> While in the hole . . . freezing temperature with no proper clothing or mat nor sheet or cover 16 hours per day, not allowed to shower or clean teeth until every 3 days for only 30 minutes, served loaf cold 3 meals every day, unable to flush toilet except every 3 hours while sharing a cell with another toxic waste, refusal to clean cell, slept on floor as a state prisoner . . . .

The Eighth Amendment provides an inmate the right to be free from cruel and unusual punishment. "Extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9, (1992). A plaintiff must allege that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834

---

[2] The Court liberally construes that amended complaint as asserting that Plaintiff was in the "hole" for approximately one week (it may have been less) because Plaintiff alleges that he was incarcerated at MCDC from December 5, 2022, until December 20, 2022, and that he was placed in the hole "during his second week."

11

(1994). Moreover, "[c]onditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x 204, 209-10 (6th Cir. 2017) (citing *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)).

The Court first addresses Plaintiff's complaint that during his one week in segregation he could only flush the toilet every three hours and was therefore exposed to "toxic waste." Temporary exposure to unsanitary conditions do not violated the Eighth Amendment. *See Dykes v. Benson*, No. 22-1184, 2022 U.S. App. LEXIS 32288, at *16-17 (6th Cir. Nov. 22, 2022); *see Lamb,* 677 F. App'x at 209-10 (inmate's four-hour exposure to human waste due to flooded toilet water insufficient to state a constitutional violation); *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation where an inmate complained that he was exposed to raw sewage from an overflowed toilet in his cell for four days); *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 958 (8th Cir. 1994) (deplorably filthy and patently offensive cell with excrement and vomit not unconstitutional because conditions lasted only for 24 hours).

The Court next turns to Plaintiff's allegation what he was required to spend his second week of confinement at MCDC in the "hole" in "freezing temperature with no proper clothing or mat nor sheet or cover 16 hours per day." Courts have repeatedly held that that temporary exposure to conditions such as these do not give rise to a constitutional violation. *See*, *e.g.*, *Grissom v. Davis*, 55 F.App'x 756, 757-58 (6th Cir. 2003) (seven-day period where inmate was not given mattress, blanket, or sheets did not deprive her of basic human needs or cause her to suffer serious harm); *Wells v. Jefferson Cnty. Sheriff Dep't*, 35 F. App'x 142, 143 (6th Cir. 2002) (sleeping on a mattress on the floor in a cold cell for six days was not a constitutional violation); *Martinez v. Gore*, No. 5:21-CV-P50-TBR, 2021 U.S. Dist. LEXIS 104358, at *37 (W.D. Ky.

12

June 3, 2021) ("The Court finds that Plaintiff's claim that he spent four days with nothing but paper boxers to wear in a cold cell with no mat, sheets, blankets, shoes, socks, or other property, standing alone, does not state a [constitutional] claim.").

As to Plaintiff's claim that he spent his first week in a cell with mold on the walls, the mere allegation of the presence of some mold does not create a condition intolerable for prison confinement." *Lyons v. Wickersham*, No. 2:12-CV-14353, 2012 U.S. Dist. LEXIS 178576, at *9 (E.D. Mich. Dec. 18, 2012) (citing *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)).

Plaintiff also alleges that Defendants violated his constitutional rights by serving him only "cold loaf" three times a day while he was in the "hole." Inadequate or unsafe food allegations rise to the level of an Eighth Amendment violation only when the prison fails to provide adequate nutrition to inmates. *See Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (no Eighth Amendment violation where the plaintiff did not allege that his health suffered as a result of meal deprivation); *Cunningham v. Jones*, 567 F.2d 653, 660 (6th Cir. 1977) (no Eighth Amendment violation if the food provided by the prison was "sufficient to maintain normal health"). Thus, because Plaintiff's "cold loaf" allegations are not accompanied by allegations that he was denied adequate nutrition as a result, he fails to state an Eighth Amendment claim.

Finally, Plaintiff's allegation that he was only allowed to shower or brush his teeth every three days during the one-week period he was in the "hole" also fails to state an Eighth Amendment claim. *See Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (allegations of overcrowded cells with denials of showers and out-of-cell exercise were not of constitutional magnitude where the conditions only lasted for six days one year and ten days the next year); *Metcalf v. Veita*, No. 97-1691, 1998 U.S. App. LEXIS 18266, *4 (6th Cir. Aug. 3, 1998) (eight-day denial of

showers, among other sanitation issues, did not result in serious pain or offend contemporary standards of decency).

For these reasons, the Court concludes that Plaintiff's conditions-of-confinement claims must be dismissed for failure to state a claim upon which relief may be granted.

### b. Deliberate Indifference to a Serious Medical Need

The Court next turns to Plaintiff's allegation that he was refused medical treatment while he was in the "hole" because he expressed that he has "a history of anemic and [] experienced high blood pressure and could not breathe."

An Eighth Amendment claim for deliberate indifference to a serious medical need has both an objective and a subjective component. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). To meet the objective component, the plaintiff must show that the medical need is "sufficiently serious." *Farmer*, 511 U.S. at 834 (1994). For purposes of this initial review, the Court will assume the Plaintiff has alleged that he had a sufficiently serious medical need which satisfies the objective standard of an Eighth Amendment claim.

The subjective component of the Eighth Amendment standard is met "where a plaintiff demonstrates that prison officials acted with 'deliberate indifference' to a serious medical need," which "is the equivalent of 'recklessly disregarding that risk.'" *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 836). In other words, "[s]atisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant prison official acted with a sufficiently culpable state of mind.'" *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)). Under the subjective prong, a plaintiff must show: (1) "the official being sued subjectively perceived facts from which to infer substantial

14

risk to the prisoner"; (2) the official "did in fact draw the inference"; and (3) the official "then disregarded that risk." *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). Here, Plaintiff has failed to allege that any Defendant knew that that Plaintiff was at substantial risk of serious harm while in hole and then disregarded that risk.

Thus, the Court will also deny Plaintiff's claim for deliberate indifference to a serious medical need.

### 3. Fourteenth Amendment Procedural Due Process

#### a. Grievance Procedure

Plaintiff states before he went to the "hole," "grievance forms were only accessible until 1 p.m. every weekday and none at all over the weekend" and that, while he was in the "hole," he did not have access to grievance forms. Both the Supreme Court and the Sixth Circuit have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *See*, *e.g*., *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)*; Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002). Thus, the Court will dismiss this claim for failure to state a claim upon which relief may be granted.

#### b. Segregation

Plaintiff also seems to claim that his right to due process was violated when he was placed in the "hole" for arguing with another prisoner. In <u>Sandin</u>,, the Supreme Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to *Sandin*, a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship

on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of his sentence." *Id*. at 484-87.

Courts generally consider the nature and duration of a stay in segregation in determining whether it imposes an atypical and significant hardship. *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Although Plaintiff details how the nature of his confinement changed after he was placed in disciplinary segregation, the Sixth Circuit has held that placement in segregation for a relatively short period of time do not require the protections of due process. Indeed, the Court can find no case in which a stay of one week or less in segregation was considered an "atypical and significant hardship." *See Sandin*, 515 U.S. at 484 (disciplinary segregation for 30 days did not impose and atypical and significant hardship); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant); *cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Thus, because Plaintiff's placement in segregation was so brief, the Court will also dismiss this procedural due process claim for failure to state a claim upon which relief may be granted.

### c. Transfer

Finally, the Court next addresses Plaintiff's claim that he was transferred to another jail only two weeks after being transferred to MCDC. This claim fails because prisoners do not have a liberty interest in being confined in a particular prison. *See Meachum v. Fano*, 427 U.S. 215,

16

228 (1976); *Olim v. Wakinekona*, 461 U.S. 238 (1983). Thus, the Court will also dismiss this claim for failure to state a claim upon which relief may be granted.

## IV.

For the foregoing reasons, the Court will dismiss this action by separate Order.

Date: September 14, 2023

*Joseph H. McKinley Jr., Senior Judge*
United States District Court

cc: Plaintiff, *pro se*
4414.011

17